IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOU ANN MAES, ) | | |
| Plaintiff, ) | | No. 07 CV 7180 |
| ) | | |
| v. ) | | Judge Moran |
| ) | | |
| ROBERT FOLBERG, BOARD OF TRUSTEES ) | | Magistrate Judge Brown |
| FOR THE UNIVERSITY OF ILLINOIS, ) | | |
| ) | | |
| Defendants. ) | | |

**DEFENDANT BOARD OF TRUSTEES' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNT I PURSUANT TO FRCP 12(B)(1), OR ALTERNATIVELY, PURSUANT TO FRCP 12(B)(6), TO STRIKE CERTAIN CLAIMS**

Defendant Board of Trustees for the University of Illinois (the "Board"), by its attorneys, submits this Memorandum in support of its motion pursuant to Fed. R. Civ. P. 12(b)(1) requesting that the Court decline to exercise supplemental jurisdiction over Count I of Plaintiff Lou Ann Maes' ("Dr. Maes" or "Plaintiff") Complaint. Alternatively, the Board moves to strike from Count I Plaintiff's claim for compensatory and punitive damages, her claim for back pay associated with her Medical Center position, and certain allegations in her Complaint. The Board also joins in the motion to dismiss of Robert Folberg, M.D. ("Dr. Folberg") with respect to Count VI because Plaintiff has failed to state a claim against the Board.

**INTRODUCTION**

Plaintiff, a current associate professor in the University of Illinois at Chicago's ("UIC") College of Medicine, has filed a seven-count Complaint against Dr. Folberg, Plaintiff's supervisor and the Head of the Pathology Department at the University of Illinois Medical Center at Chicago ("Medical Center") and against the Board, alleging, in large part, that Defendants retaliated against her for reporting violations of federal law and regulations in the

Medical Center. (Compl. ¶ 3). Plaintiff purports to allege the following claims against the Board: (1) violations of the Illinois State Officials and Employee Ethics Act, 5 ILCS 430/15-5 *et seq.* (the "Ethics Act") against both Defendants; (2) a Family and Medical Leave Act ("FMLA") claim against the Board; (3) a § 1983 First Amendment claim against Dr. Folberg individually and in his official capacity for prospective injunctive relief; and (4) a § 1983 "stigma-plus" claim against Dr. Folberg individually and in his official capacity for prospective injunctive relief. This motion concerns only Counts I and VI.

The Board asks the Court, pursuant to 28 U.S.C. § 1367(c), to decline supplemental jurisdiction over Count I. The multitude of issues raised and to be raised under the Ethics Act are all state law issues of first impression that are better left to the state courts to decide in the first instance. Alternatively, if the Court does not decline supplemental jurisdiction, the Board requests that it strike any reference to, or claim based on statements made to Patrick Ooley ("Mr. Ooley") and Occulogix in paragraphs 36 and 37 of the Complaint, to strike Plaintiff's claims for compensatory and punitive damages, and to strike any claim for relief related to the non-renewal of her contract with the Medical Center, because the Ethics Act does not provide relief for such claims.

## ARGUMENT

### I. This Court Should Exercise its Discretion to Decline Supplemental Jurisdiction under 28 U.S.C. § 1367(c).

Section 1367(c) permits a court to decline to exercise supplemental jurisdiction over a claim where "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). The courts invoking § 1367(c) have not hesitated to decline supplemental jurisdiction when, as here, there are novel issues of state law and there is no state court precedent on point. *See, e.g., Linnemeier v. Indiana Univ.-Purdue Univ.-Fort Wayne*, 155 F. Supp. 2d 1044, 1056 (N.D. Ind.

2001). In *Linnemeier*, the court declined supplemental jurisdiction because there had been only one Indiana case that addressed the section of the State Constitution at issue, and "retaining this claim may require the Court to embark on an interpretation of Indiana's Constitution, virtually unguided by state court precedent." *Id.* Thus, the court held: "[a]s a matter of comity, whether the acts in question violate Indiana's Constitution are best left to the province of Indiana's state court judges." *Id.* The discretion permitted by § 1367(c) arises out of the federal judiciary's long tradition of comity – deferring to state courts where state law issues predominate. "[T]he notion of 'comity,'" Justice Black has asserted, is composed of "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as 'Our Federalism'. . . ." *Younger v. Harris*, 401 U.S. 37, 44 (1971). Comity is not a rule of law but "one of practice, convenience, and expediency" which persuades but does not command. *Mast, Foos & Co. v. Stover Manufacturing Co.,* 177 U.S. 458, 488 (1900).

Comity should be exercised here as the circumstances in our case are compelling. There have been <u>no</u> state cases interpreting the Ethics Act, leaving this Court completely unguided by state court precedent. In *American Soc. of Consultant Pharmacists v. Patla*, 138 F. Supp. 2d 1062, 1073 (N.D. Ill. 2001), the court also declined to exercise supplemental jurisdiction because the state claim "raise[d] a novel or complex issue of state law" and there were "compelling reasons for declining jurisdiction." The *Patla* court concluded:

> [R]etaining this claim may require the Court to embark on an interpretation of this
> requirement, unguided by state court precedent. In addition, . . .[t]he IPAC claim
> would require determinations of state law regarding decisions by state officials
> that, even if they fall within our judicial province, are as a matter of comity better

left to state courts.

*Id.* at 1073. *See also Aikens v. Talbot Hoevel & Assocs., P.C.,* 1996 WL 675780, *5 (N.D. Ill. 1996) ("[W]e are presented with a novel issue of state law, the resolution of which is more appropriately left to the courts of Illinois than undertaken by a Federal District Court.").

Similarly, the Ethics Act claim clearly raises complex issues of state law, which are matters of first impression and for which there is little legislative history. In connection with Defendants' present motions, the Court must address how concepts like personal liability, punitive damages, and compensatory damages are applied under the Ethics Act. These, however, are only a few of many first-impression issues that will arise in this case.

For example, Plaintiff seeks back pay since August 15, 2006 -- when her clinical appointment at the Medical Center ended by its terms and was not renewed. This issue will be discussed in depth in section II (B) below, but the nonrenewal of her appointment is simply not actionable under the Ethics Act because it does not fit within the Ethics Act's narrow definition of "retaliatory action."

In addition, there is some question as to whether the Ethics Act applies to Plaintiff at all. Under the provisions of the Ethics Act, Plaintiff is both a State employee and the "Supervisor" responsible (1) for correcting the actions of which she alleges she complained to a Public Body; *and* (2) for reporting such actions to the Public body. *See* ILCS 430 15-5 and 15-10. She is not the kind of State employee the Legislature envisioned would be protected by the Ethics Act, since such reporting is part of her job. *Cf. Garcetti v. Ceballos*, 126 S. Ct 1951 (2006). Accordingly, Plaintiff might not be protected by the Ethics Act at all.

A further novel issue arising under Count I is the burden of proof standard under § 15-20 of the Act. Plaintiff incorporates the first 61 paragraphs of the Complaint and attempts to connect a host of "adverse employment actions" with what she claims to be protected conduct

under the Act.  However, much of what she claims to be protected activity falls clearly outside the definitions in §§ 15-5 and 15-10 of the Act.  This includes her allegations that she reported information to Occulogix and to Mr. Ooley (s*ee* Compl. ¶¶ 36-37), neither of whom are a Public Body or Supervisor.  The reviewing court will ultimately need to address the built in conflict in § 15-20 (Burden of Proof), *e.g.,* reconciling the language that Plaintiff must show her alleged protected conduct was a "contributing factor" in the retaliatory action, with the language in that same section that it is not a violation of the Ethics Act if the University "would have taken the same unfavorable personnel action" anyway.  Plaintiff will not be able to establish that § 15-10 protected conduct is a "contributing factor" if it did not proximately cause the retaliatory action.

These examples highlight the fact that this is a complicated area of state law bereft of state court guidance.  Such matters are better left to the state court in the first instance.  *See Pennhurst v. Halderman*, 465 U.S. 89, 122 (1984) ("When a federal decision on state law is obtained, the federal court's construction often is uncertain and ephemeral.").  Thus, Defendants urge this Court to decline supplemental jurisdiction over the Ethics Act claim and dismiss Count I.

**II.     Alternatively, This Court Should Strike Plaintiff's Claims for Compensatory Damages for Emotional Distress and for Punitive Damages, Her Claim for Back Pay and Other Relief for Failure to Renew Her Contract with the Medical Center, and Her Claim for Relief for Statements Made to Occulogix and Mr. Ooley.**

In the event that the Court does not decline supplemental jurisdiction over Count I, the Board requests that the Court strike Plaintiff's claim for compensatory and punitive damages, any claim for relief associated with the failure to renew her contract with the Medical Center, and any claim for relief based on her statements to Occulogix or Mr. Ooley.

**A.     The Ethics Act does not authorize punitive or compensatory damages.**

1.   <u>The strong public policy presumption against a State legislature authorizing punitive damages against the State has not been overcome.</u>

It is well established that absent clear, unambiguous, and explicit statutory authorization to the contrary, courts prohibit the imposition of punitive damages on a governmental body or agency for the acts of its agents or employees. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261, n.21 (1981) ("The general rule today is that no punitive damages are allowed [against governments] unless expressly authorized by statute."); *see also Katt v. City of New York*, 151 F. Supp. 2d 313, 332 (S.D.N.Y. 2001). This prohibition is based on the sound public policy that the purposes of punitive damages – punishment and deterrence – are defeated when levied against the State, rather than against a private litigant. *See City of Newport*, 453 U.S. at 263 ("punitive damages [against governments are] contrary to sound public policy, because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised").

Illinois courts follow this rule. *See, e.g., George v. Chicago Transit Auth.*, 374 N.E.2d 679, 680-81 (Ill. App. Ct. 1978). In *George*, the court ruled that, absent a statute *specifically authorizing* such recovery, municipal corporations are not liable for punitive damages. *See id*. ("[t]o authorize the levy of punitive damages against a public entity 'would impose an unjust burden upon the innocent taxpayer without directly punishing the wrongdoer. The punitive purpose would thus be frustrated.'" (Internal citations omitted)).

The history of the Ethics Act confirms the conclusion that the Illinois legislature never intended for punitive damages to be a remedy under the Ethics Act. In passing the Ethics Act, the Illinois Legislature contemplated that liability for § 15-25 remedies would be solely against the State Agency. In its original form, § 15-10 (Protected Activity) of the Ethics Act included "a

member, an officer, or a state Agency" as the actors to whom the Act applied, and no argument existed that a State employee was individually liable for § 15-25 remedies.  In fact, to facilitate the court awarding these remedies <u>against the State Agency</u>, the Legislature amended the Immunity Act to waive its immunity for suits against the State.  *See* 745 ILCS 5/1.[1]

Subsequently, the Governor sought to correct one flaw in the Act, which was a lack of an "enforcement mechanism."  (*See* IL H.R. Jour., 2003 Reg. Sess. No. 70, pp. 67-68 (1993)). Utilizing his amendatory veto, the Governor proposed amending § 15-10 to add "a State employee."  The intended impact of the amendment was to correct a loophole in § 50-5 (Penalties) - under which an intentional violator is subject to criminal prosecution and a fine - because, as originally enacted, there would be no persons to prosecute for a violation of Article 15 of the Act.  By adding "state employee" to § 15-10, the disconnect between Articles 15 and 50 was corrected, and a State employee now could be liable for *intentional* violations of Article 15 under the express penalty provisions of Article 50.[2]  Such addition, however, did not affect the employer-centric remedies section of the Act (§ 15-25).  By adding "state employee" to § 15-10, the Legislature did not intend to make a State employee jointly responsible for the civil remedies provided by the Act.

Given the policy against implying punitive damages against the State, the addition of "state employee" to § 15-10 demonstrates that punitive damages were never intended as a remedy in § 15-25.  Specifically, this amendment shows that the § 15-25 remedies envisioned by the Legislature at the time the Ethics Act was enacted were intended to be imposed solely against

---

[1] 745 ILCS 5/1.  Immunity of State as defendant or party in court.
§ 1. Except as provided in . . . the State Officials and Employees Ethics Act . . . the State of Illinois shall not be made a defendant or party in any court.

[2] Providing a separate and specific penalty for intentional violations under Article 50 is yet another piece of evidence suggesting that the Legislature did not intend for punitive damages to be available under the Act.  An intentional violator is subject to criminal prosecution and a fine.

the State agency. Moreover, the kinds of remedies provided in the Ethics Act, which by their very nature were clearly intended to be imposed against the State, support this view. Indeed, most of the remedies made available would not even be within the control of an individual State employee. Thus, it is inconceivable the Legislature intended to impliedly allow punitive damages against the State.

In addition, it is well established that common law should not be considered repealed by implication. *See Reeves v. Eckles*, 222 N.E.2d 530, 531 (Ill. App. Ct. 1966). The Legislature certainly understands the availability of punitive damages as a potential remedy as there are scores of Illinois statutes that specifically provide for punitive damages. *See, e.g.,* 720 ILCS 5/12-7.1 (2007) (stating in a hate crime statute "the court may award actual damages, including damages for emotional distress, or punitive damages"); *see also* 415 ILCS 5/22.15a(f) (specifically allowing for punitive damages for illegal dumping under the Illinois Protection Act). Accordingly, the Legislature's failure to specifically provide for punitive damages in the Ethics Act creates a strong presumption that the Legislature intentionally chose *not* to include punitive damages as a remedy.

Given that there can be no punitive damages awarded against the State under the Ethics Act, there is no legitimate basis for awarding punitive damages against an individual state employee under the same language. Indeed, the inclusion of a separate Penalty section in Article 50 suggests just the opposite intent. Not only may the State employee be prosecuted for a Class A misdemeanor (*see* § 50(a)) but the employee expressly remains subject to the penalty of discipline and discharge as well (*see* § 50(f)). There is no indication of the Legislature's intention to permit the punishment of the State Agency or a State Employee with punitive damages.

### 2. The specific civil penalties provided in Section 15-25 demonstrate the unavailability of punitive damages.

The remedies section of the Act, § 15-25, does not mention compensatory or punitive damages but instead, only backpay, double backpay, and other employment-related affirmative relief. By specifying the remedy of "2 times the amount of back pay" in § 15-25(2), the Legislature manifested its intent to limit available penalties to that amount. Although the Act authorized "all remedies necessary … to prevent future violations," it is well-established that a statutory award of double or treble damages, like the one provided in the Ethics Act, is, in and of itself, punitive. *See, e.g., Cook County v. Chandler*, 538 U.S. 119, 120 (2003); *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 361 (Ill. 1986); *Paulson v. County of De Kalb*, 268 Ill. App. 3d 78 (Ill. App. Ct. 1994). Under Illinois and federal law, statutory remedies specifying multiplied compensatory damages are the equivalent of punitive damages, with the multiplier serving as the Legislature's formula for calculating appropriate penalties. *See Fahner v. Climatemp, Inc.*, 101 Ill. App. 3d 1077, 1081 (Ill. App. Ct. 1981).

In *Neal v. Honeywell, Inc.*, 995 F. Supp. 889, 895-96 (N.D. Ill. 1998), this Court held that, by providing double back pay to employees discharged for whistleblowing activities, Congress intended to limit punitive damages under the False Claims Act (FCA) to that amount. The court reasoned that Congress identified the specific remedies that it deemed appropriate and that "[s]ome are already punitive in nature. For example, back pay with interest and moving expenses would appear to render plaintiff whole. Doubling back pay does more and can only be intended to punish the employer." *Id.* at 895; *see also Perez v. Z. Frank Oldsmobile, Inc.*, 233 F.3d 617, 620-21 (7th Cir. 2000) ("When a federal statute provides for treble damages (or some other multiplier), judges regularly conclude that punitive damages may not be added."). Consequently, awarding Plaintiff punitive damages, <u>in addition</u> to the statutorily prescribed

double back pay, would constitute an impermissible double recovery. *See, e.g., Harris*, 111 Ill. 2d at 361; *Verdonck v. Scopes*, 226 Ill. App. 3d 484, 491 (Ill. App. Ct. 1992).

Interpreting the phrase, "Remedies imposed by the court may include, but are not limited to . . ." to mean that the court has authority to impose additional punitive damages would require the court to effectively re-write the express double damages provision of the Ethics Act, and change "*2 times the amount of back pay,*" to say "*2 times the amount of back pay or such other multiple of back pay or punitive damages that the court desires.*" The general statement "not limited to …" before the list of types of damages available should not be interpreted to override the express limit of double damages and render that express penalty of double back pay superfluous. Courts that have addressed other statutes with language similar to the Ethics Act have deemed them <u>not</u> to provide for punitive damages. For example, in *Doe v. Chand, M.D.*, 781 N.E.2d 340, 349 (Ill. App. Ct. 2003), the court concluded that the language providing for "such other relief as the court may deem appropriate" under the AIDS Confidentiality Act did not permit punitive damages, because (1) "it is well-settled that punitive damages, because of their penal nature, are not favored by law," and (2) more importantly, because the statute already provided for an increased penalty for reckless or intentional violations, it was apparent that the Legislature chose not to provide for the separate recovery of punitive damages. Accordingly, for the above reasons, Plaintiff's request for punitive damages under Count I should be stricken.

       3.    <u>There is no legislative intent that damages for pain and suffering be available</u>.

Similarly, the Ethics Act does not authorize an award of compensatory damages. The Act does not specifically provide for compensatory damages, and there is no any suggestion that the legislature intended such damages to be an available remedy. The best indicator of legislative intent is the plain language of the statute. *Wisniewski v. Kownacki*, 221 Ill. 2d 453,

460, 851 N.E.2d 1243 (Ill. 2006). The Ethics Act specifically enumerates the remedies available to Plaintiff:

> **§ 15-25. Remedies.** The State employee may be awarded all remedies necessary to make the State employee whole and to prevent future violations of this Article. Remedies imposed by the court may include, but are not limited to, all of the following:
> (1) reinstatement of the employee to either the same position held before the retaliatory action or to an equivalent position;
> (2) 2 times the amount of back pay;
> (3) interest on the back pay;
> (4) the reinstatement of full fringe benefits and seniority rights; and
> (5) the payment of reasonable costs and attorneys' fees.

5 ILCS 430/15-25. The statute does not mention damages, either compensatory or punitive, indicating that the legislature did not intend to make such damages available to a plaintiff. *Cf. Kramer v. Banc of Am. Securities*, 355 F.3d 961, 965 (7th Cir. 2004) (compensatory and punitive damages are not available to a plaintiff bringing an ADA retaliation claim) (*citing National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) ("A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.")).

Furthermore, those remedies that are enumerated as being available for the *court* to award are clearly equitable. Had the legislature intended to define "make whole" to include compensatory or punitive damages as a remedy under Article 15 of the Ethics Act, it could have expressly done so as it did in the Illinois Whistleblower Act—a whistleblower statute applicable to <u>private</u> employers. When ascertaining legislative intent, "[i]t is appropriate statutory construction to consider similar and related enactments, though not strictly *in pari materia*." *DeLuna v. Burciaga*, 857 N.E.2d 229, 236 (Ill. 2006). Moreover, statutes relating to the same subject matter that are passed at the same session of the General Assembly should be interpreted

with reference to each other. *Henrich v. Libertyville High Sch.*, 712 N.E.2d 298 (Ill. 1998). The Whistleblower Act and Article 15 of the Ethics Act were both passed during the 93rd General Assembly in 2003. 740 ILCS 174/1; 5 ILCS 430/15-5. Both statutes expressly provide the types of remedies the Legislature intended for an employee who is discharged for disclosing a violation of a law, rule, or regulation. Like Article 15 of the Ethics Act, the Whistleblower Act authorizes equitable relief in the form of reinstatement and back pay. 740 ILCS 174/30. However, unlike the Whistleblower Act, which expressly provides for an award of damages,[3] the Ethics Act makes available no such award. The Ethics Act allows two times the amount of back pay and interest, while the Whistleblower Act references only back pay and interest. The language of the Whistleblower Act helps reveal the legislature's intent *not* to include compensatory and punitive damages as remedies under the Ethics Act.

Another telling sign that the Legislature's omission of any reference to compensatory or punitive damages was intentional is the subsequent amendment of the Ethics Act to add a fifth remedy --"(5) the payment of reasonable costs and attorneys' fees." *See* 5 ILCS 430/15-25 (5). This remedy was not in the original bill (P.A. 93-615), but was added by P.A. 93-617. With that amendment, the Legislature clarified the remedies available under the Ethics Act to include reasonable costs and attorneys fees, but it did not add damages to the list of remedies. If, as Plaintiff contends, the Legislature's intent was that everything is fair game as a possible remedy, there would have been no need for the Legislature to add subsection 5 to the Remedies section of the Act.

Finally, while the Ethics Act includes language "necessary to make the employee whole," the legislature has already established a framework to make a state employee whole by proving

---

[3] A plaintiff may recover: "*compensation for any damages* sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees." 740 ILCS 174/30(3) (emphasis added).

for (i) reinstatement of the employee's position; (ii) two times the amount of back pay; (iii) interest on the back pay; (iv) reinstatement of fringe benefits and seniority rights; and (iv) reasonable costs and attorneys' fees. 5 ILCS 430/15-25. Plaintiff's attempt to expand the scope of available remedies to include compensatory damages against the State of Illinois and its instrumentalities without a clear legislative intent to do so should therefore be rejected.

### B. Failure to renew a contract is not a retaliatory action as defined by the Ethics Act or under Illinois common law.

Plaintiff is seeking back pay since August 15, 2006 -- when her clinical appointment at the Medical Center ended by its terms and was not renewed. However, that nonrenewal of her appointment simply does not come within the Ethics Act's narrow definition of "retaliatory action,"[4] which sets forth discrete categories of covered employment actions.[5] The decision to not renew her appointment past August 15, 2006 was neither a termination nor a retaliatory action, so Plaintiff is not entitled to back pay for such decision under the Ethics Act.

Moreover, Illinois courts have established that failure to renew an employment contract is not grounds for a retaliatory discharge claim. *See Bajalo v. Northwestern Univ.*, 860 N.E.2d 556, 565 (Ill. App. Ct. 2006) (citing cases from Illinois and other jurisdictions to support the proposition that failure to renew employment contract is *not* retaliatory discharge). The trend in Illinois has been to narrow the scope of the retaliatory discharge claim, and allowing a recovery for back pay based on nonrenewal would be inconsistent with this principle. *See id.*; *Krum v. Chicago Nat. League Ball Club, Inc.*, 851 N.E.2d 621, 625 (Ill. App. Ct. 2006) ("[A]bsent a statutory basis, contractual employees . . . cannot bring a claim for retaliatory discharge when

---

[4] 15-5. "Retaliatory action" means the reprimand, discharge, suspension, demotion, or denial of promotion or transfer of any state employee in the terms of employment, and that is taken in retaliation for a State employee's involvement in protected activity, as set forth in § 15-10."

[5] This is in stark contrast to other employment statutes which define violations broadly, s*ee, e.g.,* Illinois Human Rights Act codified at 775 ILCS 5/2-102(A) ("… terms, privileges or conditions of employment . . .").

employers fail to renew an employment contract."). The failure to renew Plaintiff's clinical appointment does not fall within the definition of "retaliatory action" in the Ethics Act, and is not actionable under a common law claim of retaliatory discharge in Illinois. For these reasons, this Court should strike any and all claims for relief associated with failure to renew Plaintiff's contract with the Medical Center.

### C. Any claim based on statements made to Occulogix or Mr. Ooley is not actionable under the Ethics Act.

In ¶ 64 of Count I, Plaintiff refers to a series of allegations she makes earlier in the Complaint regarding "protected activity." However, some of the conduct Plaintiff alleges is protected is, in fact, outside the scope of the Ethics Act, and is not actionable. Specifically, she cites ¶¶ 36 and 37. These paragraphs discuss Plaintiff's interaction with Occulogix and Mr. Ooley. Because Occulogix and Mr. Ooley are neither Supervisors nor Public Bodies as defined by the Ethics Act, these claims are not actionable and should be stricken from the Complaint.

Specifically, in ¶ 36 of the Complaint, Plaintiff states that she reported alleged staffing issues to Occulogix and "was criticized for doing so by Defendant Folberg." Reporting internal problems to Occulogix is not a protected activity. The Ethics Act prohibits retaliatory action against an employee who reports a violation to "a supervisor or public body." 5 ILCS 430/15-10. Those terms are defined in § 15-5 of the Act, and it is plain that Occulogix does not fall within either definition.

Similarly, in ¶ 37 of the Complaint, Plaintiff states that she discussed various alleged violations and falsification of records with Mr. Ooley, and that, as a result, she "was not allowed to attend the final summation meeting with Mr. Ooley or to see his final report . . . ." Even if these actions could be construed to be retaliation, this claim fails for the same reason as the one

relating to Occulogix. Because Mr. Ooley is not her "supervisor" as defined in § 15-5, Plaintiff's communication with him was not a protected activity under the Ethics Act.

For these reasons, this Court should strike the paragraphs in question, and dismiss any claim for relief based on Plaintiff's statements made to Occulogix or Mr. Ooley.

### III.　Plaintiff Has Failed to State a Stigma-Plus Claim in Count VI.

The Board adopts the motion and brief of Dr. Folberg's motion to dismiss Count VI for failure to state a claim.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court decline to exercise supplemental jurisdiction over Count I pursuant to Fed. R. Civ. P. 12(b)(1) and dismiss it from the Complaint on that ground. Alternatively, Defendants request that the Court strike Plaintiff's claims for compensatory and punitive damages, her claim for back pay associated with the nonrenewal of the Medical Center position and any reference to or claims based on Patrick Ooley or Occulogix in paragraphs 36 and 37 of the Complaint.

Dated:　January 3, 2008

    Respectfully submitted,

    **THE BOARD OF TRUSTEES FOR THE UNIVERSITY OF ILLINOIS**

    By:　s/ Mark E. Furlane
    Mark E. Furlane, Esq. (ARDC # 00897175)
    Noreen H. Cull, Esq. (ARDC # 06229417)
    **Drinker Biddle Gardner Carton**
    (Drinker Biddle & Reath, LLP)
    Telephone:  (312) 569-1000/ Fax:  (312) 569-3000
    191 North Wacker Drive, Suite 3700
    Chicago, Illinois 60606-1698
    E-mail:  mark.furlane@dbr.com
    E-mail:  noreen.cull@dbr.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on January 3, 2008, he caused a copy of the foregoing **DEFENDANT BOARD OF TRUSTEES' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNT I PURSUANT TO FRCP 12(B)(1), OR ALTERNATIVELY, PURSUANT TO FRCP 12(B)(6), TO STRIKE CERTAIN CLAIMS**, to be served by electronically filing it with the Clerk of the Court, which will send notification of such filing to the following:

Steven Saltzman
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603
Email: ssaltzcases@aol.com

By: s/ Mark E. Furlane
Mark E. Furlane, Esq. (ARDC #00897175)
DRINKER BIDDLE GARDNER CARTON
191 North Wacker Drive, Suite 3700
Chicago, Illinois 60606-1698
Telephone: (312) 569-1000
Fax: (312) 569-3000
E-mail: mark.furlane@dbr.com

CH01/ 12526031.8