IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOU ANN MAES, | ) | |
| Plaintiff, | ) | No. 07 CV 7180 |
| v. | ) | Judge Moran |
| | ) | Magistrate Judge Brown |
| ROBERT FOLBERG, BOARD OF TRUSTEES | ) | |
| FOR THE UNIVERSITY OF ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT ROBERT FOLBERG'S MEMORANDUM IN
SUPPORT OF HIS MOTION TO DISMISS**

Defendant Robert Folberg, M.D. ("Dr. Folberg") joins in the Board of Trustees of the University of Illinois' (the "Board") motion with regard to Count I of Plaintiff's Complaint under FRCP 12(b)(1). Alternatively, Dr. Folberg moves pursuant to FRCP 12(b)(6) to dismiss Counts I against him and to dismiss Counts II, III, VI and VII. In support of his motion he states:

**INTRODUCTION**

Plaintiff, a current associate professor in the University of Illinois at Chicago's College of Medicine, has filed a seven-count Complaint against Dr. Folberg, her supervisor and the Head of the Pathology Department at the University of Illinois Medical Center at Chicago ("Medical Center"), and the Board. The Board has moved the Court to decline supplemental jurisdiction over Count I, and alternatively, to strike other parts of Count I, in which motion Dr. Folberg joins. Alternatively, Dr. Folberg submits Count I should be dismissed against him because there is no personal liability under the Ethics Act. The two state common law claims of defamation (Count III) and tortious interference with economic opportunity (Count II) should also be dismissed because Dr. Folberg is entitled to absolute immunity for the alleged statements on which such claims are based and some allegations fail to state a claim. Alternatively, because of the vague nature of some of the defamatory statements, Plaintiff should be ordered to make a

more definite statement under FRCP 12(e). Finally, Plaintiff's § 1983 claims of stigma-plus (Count VI) and unreasonable seizure (Count VII) should also be dismissed because neither claim states a constitutional violation, and even if they did, Dr. Folberg is protected by qualified immunity for both claims.

## ARGUMENT

**I. This Court Should Exercise its Discretion to Decline Supplemental Jurisdiction Over Count I. Alternatively, Count I Should be Dismissed Against Dr. Folberg Because the Ethics Act Does Not Create Personal Liability.**

In the event this Court does not decline to exercise supplemental jurisdiction, Count I should be dismissed against Dr. Folberg because the Illinois Legislature did not contemplate individual liability under the Ethics Acts. At the time of the Act's enactment, the State Agency alone was liable for its employees' actions. Specifically, in the original bill, the named parties prohibited from violating the Act under § 15-10 (Protected Activity) were limited to "a member, an officer, or a state Agency." Thus, under a plain reading of the statute, no argument existed that a State *employee* could be individually liable for the Act's remedies in § 15-25. Further, to facilitate a court awarding these remedies against the State Agency, the Legislature amended the Immunity Act, 745 ILCS 5/1, to waive immunity for suits against the State. Such amendment demonstrates that the Legislature's original intent was to hold the *state agency* responsible for violations of the Act -- not an individual State employee.

Subsequently, the Governor sought to correct a lack of "enforcement mechanism" flaw in the Act, and proposed amending § 15-10 to add "a State employee." (*See* IL H.R. Jour., 2003 Reg. Sess. No. 70, pp. 67-68 (1993)). The purpose of this amendment, however, was not to allow individual liability to supplant recovery from the State Agency under § 15-25. Rather, its intended impact was to correct a loophole in § 50(a) of the Act, which permits an individual to be prosecuted for intentional violations as a Class A misdemeanor (*see* § 50 (a)) while

- 2 -

continuing to be subject to the penalties of discipline and discharge (*see* § 50(f)).  As originally enacted, there would be no persons to prosecute for a violation of § 50.  By adding "State employee" to § 15-10, the unnoticed disconnect between Articles 15 and 50 was corrected, and a State employee could be liable for *intentional* violations of § 15 under the express penalty provisions of § 50.  Such addition, however, did not affect the employer-centric Act's Remedies section, which were unchanged.  By adding "State employee" to § 15-10, neither the Governor nor the Legislature intended to make a State employee jointly responsible for § 15-25 remedies.

Moreover, almost all of the remedies Plaintiff seeks under the Ethics Act[1] are either sought jointly against the State and Dr. Folberg, or are remedies that only the State has the authority to provide.  For example, Dr. Folberg is clearly not in control of reinstatement, backpay, fringe and pension benefits, expungement of records, or the injunction Plaintiff seeks.  In contrast to these employer-centric remedies, the penalties under §§ 50(a) and (f) of the Ethics Act can be imposed against *any person* who intentionally violates the Act.[2]  These penalties are the tools created by the legislature to deter State employees from violating the Act in the future -- <u>not</u> the remedies provided in § 15-25.  For these reasons, the claims against Dr. Folberg in his personal capacity under Count I should be dismissed.

## II.     Plaintiff Fails to State a Cause of Action for Defamation Against Dr. Folberg.

In support of her defamation claim, Plaintiff alleges that Dr. Folberg: (1) made false

---

[1]  *See* Plaintiff's VIII. Prayer for Relief: "Order … Defendant Trustees [to] reinstate Dr. Maes to her positions as Director of Clinical Pathology and Director of Transfusion Medicine, to remove any record of her removal . . .and … any record of her having committed plagiarism."  She also seeks remedies against Defendants jointly: "Order Defendants Trustees and Folberg to make Dr. Maes whole by giving her back pay (doubled pursuant to Counts I and IV), lost fringe and pension benefits with prejudgment interest, and compensating her for the damage to her career . . . .  Permanently enjoin Defendants from retaliating against whistleblowers like Dr. Maes."

[2]   Section 50-5(a): "A person is guilty of a Class A misdemeanor if that person intentionally violates any provision of § 5-15, 5-30, 5-40, 5-45 or Article 15."  Section 50-5(f): "In addition to any other penalty that may apply, whether criminal or civil, a State employee who intentionally violates any provision of § 5-15, 5-20, 5-30, 5-50, 5-45, Article 10, Article 15. . . is subject to discipline or discharge by the appropriate ultimate jurisdictional authority."

statements to the College of Dentistry Dean that Dr. Maes committed plagiarism; (2) "is believed to have made such communications within the College of Medicine to colleagues in order to prevent Dr. Maes from receiving tenure"; and (3) "[o]n information and belief," . . . made or caused to be made such false and malicious statements to persons outside the College of Medicine" (Compl. ¶ 71). Plaintiff's claim is barred as to the first two statements because Dr. Folberg is protected by absolute immunity. The third communication does not state claim and should be struck, or the Court should order a more definite statement under Fed. R.Civ. P 12(e).

It is well-settled under Illinois law that, if the common law of absolute privilege applies, a defendant is immune from suit for defamation, and an allegation of malice, bad faith, or communication of a known falsehood will not defeat that privilege. *See Coons v. Hessler,* 1999 WL 410013 (N.D. Ill. 1999); *Geick v. Kay,* 236 Ill. App. 3d 868 (2nd Dist. 1992); *Morton v. Hartigan,* 145 Ill. App. 3d 417 (1st Dist. 1986); *O'Connor v. Smith*, 1996 WL 1063820, *6 (Ill. Ct. Cl. 1996); *Glass v. Jackson*, 382 N.E.2d 709, 710-11 (Ill. App. Ct. 1978). Dr. Folberg is protected by the absolute privilege because he satisfies both prongs of absolute immunity test, as articulated in *Barr v. Mateo*, 360 U.S. 564 (1959): (1) he is an executive branch officer under applicable law, and (2) the communications were within the scope of his duty and responsibility.

Illinois courts have recognized that this privilege extends to a wide variety of executive officers and public officials. *See, e.g., O'Connor*, 1996 WL 1063820, *10; *Whitaker v. Young* 2001 WL 138926, *4 (N.D. Ill. 2001) ("[r]ank is not determinative as to the availability of immunity . . ."). Plaintiff alleges "[Dr. Folberg] has been the chair of the Pathology department at the UIC Medical Center and a Professor in the College of Medicine since 2000. At all times relevant hereto, Dr. Folberg was Dr. Maes' supervisor and empowered to remove her from her positions in the Pathology Department at UIC Medical Center. . . .[and] had ultimate supervisory

authority over the Blood Bank and other clinical laboratories at the UIC Medical Center." (Compl. ¶¶ 8, 74.) As a Department Head at the University, Dr. Folberg is high-ranking enough to qualify for the absolute privilege from defamation claims.

Dr. Folberg also satisfies the second prong of the privilege test with respect to the circumstances of the alleged statements, *i.e.*, "the only consideration is whether the statements made were reasonably related to one's duties." *Morton,* 145 Ill. App. 3d at 430. Dr. Folberg's alleged defamatory statements are all work-related communications. Dr. Maes was told by Dr. Folberg to focus her efforts on her position as a "pathology liaison with the College of Dentistry" (Compl. ¶ 43), which, as referenced in Dr. Folberg's letter, included some teaching of pathology classes in the College of Dentistry in Fall 2006. Dr. Folberg's alleged communication that Dr. Maes plagiarized to colleagues "within the College of Medicine . . . in order to prevent Dr. Maes from receiving tenure" are also work-related communications. (Compl. ¶¶ 8, 74.) These alleged statements are reasonably related to Dr. Folberg's responsibilities as Head of the Pathology department in the College of Medicine. Plaintiff concedes as much, stating that Dr. Folberg's duties to her "arose from his position as the academic head of a department of a university ...." (Compl. ¶ 74.) *See Glass*, 382 N.E.2d at 711 (allegedly libelous statements by state employee's supervisor regarding plaintiff's job performance were absolutely privileged).

Dr. Maes seeks to avoid the absolute immunity defense by claiming that Dr. Folberg was not acting within the scope of his duties, solely by alleging that "his actions toward Dr. Maes and in attempting to cover-up the FDA violations found by her were malicious, wrongful and inconsistent with state and federal law and the purpose for which the UIC Medical Center exists," (Compl. ¶ 61) and "because his duties to Dr. Maes arose from his position as the academic head of a department of a university to not falsely and maliciously make accusations

about a department member that would harm her academic career" (Compl. ¶ 74). Plaintiff's attempted end-run around absolute immunity has been rejected by Illinois' courts; the only relevant consideration is whether the statements made were reasonably related to Dr. Folberg's duties. *See, e.g., Geick,* 236 Ill. App. 3d at 876-77 ("An absolute privilege cannot be overcome by a showing of improper motivation or knowledge of falsity."); *Morton,* 145 Ill. App. 3d at 429 ("What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.").[3] As to the statements to the Dental School Dean and about tenure, Count III should be dismissed based on absolute privilege.

Plaintiff also alleges that "on information and belief" Dr. Folberg has "made or caused to be made" such false and malicious statements to persons outside the College of Medicine. (Compl. ¶ 71.) However, without any information about their context, to whom they were made, or when, Dr. Folberg has not been put on sufficient notice to effectively defend against these claims. Plaintiff must at least identify some minimal foundational context for the alleged defamatory statements and the parties to the statements. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007) (Plaintiff must furnish factual "allegations plausibly suggesting (not merely consistent with)" an "entitlement to relief," reflecting the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'"). Because Plaintiff fails to plead a defamation claim as to such statements "outside the College of Medicine," this Court should dismiss those parts of Count III that fail to meet this standard or pursuant to FRCP 12(e), require a more definite statement of the claim.

---

[3] *Cf. Wosniak v. Conry,* 288 Ill. App. 3d 129, 133-34 (4th Dist. 1997), in a related immunity context, "It does not matter, if as here, the plaintiff alleges the statements were knowingly false…Instead, the relevant inquiry is whether the supervisor would be acting within the scope of his duties by making truthful statements of the general type alleged."

### III. Plaintiff Has Failed to State a Claim for Tortious Interference With Economic Opportunity Against Dr. Folberg.

Count II is based on the premise that Dr. Folberg interfered with some of Plaintiff's expectations regarding research collaboration and assignments within the College of Dentistry by "falsely, maliciously, wantonly, willfully and in bad faith inform[ing] the Dean of the Dental School that Dr. Maes had committed plagiarism . . .." (Compl. ¶¶ 55, 68.) Plaintiff alleges that Dr. Folberg had knowledge of her expectation of employment with College of Dentistry and that he caused that expectation to be terminated by his alleged defamatory statements. (*See* Compl. ¶ 68.) Since the same conduct and communications form the basis of Plaintiff's defamation and tortious interference claims, the same absolute immunity barring the defamation claim governs this claim as well. *See, e.g., Geick*, 603 N.E. 2d at 129-30 (granting motion to dismiss tortious interference claim based on the absolute privilege doctrine); *Coons*, 1999 WL 410013, at *5-6 (granting motion to dismiss tortious interference claim based on absolute privilege). Thus, Dr. Folberg is protected by absolute privilege, and Count II of the Complaint should be dismissed.

### IV. Dr. Folberg is Entitled to Dismissal of the § 1983 Fourth Amendment and Fourteenth Amendment Claims both because they fail to state claims and on Qualified Immunity Grounds.

**A.   Qualified Immunity.**  The defense of qualified immunity shields Dr. Folberg from liability for the alleged § 1983 Fourth Amendment and Fourteenth Amendment claims because his conduct did not "violate[] clearly established statutory or constitutional rights of which a reasonable person would have known." *Khuans v. School Dist. 110*, 123 F.3d 1010, 1013 (7th Cir. 1997) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Once a defendant has raised a qualified immunity defense, plaintiff bears the burden of demonstrating that such immunity is not applicable." *Narducci v. Village of Bellwood,* 444 F. Supp. 2d 924, 931 (N.D. Ill. 2006) (internal citation omitted). Here, Plaintiff falls far short of meeting that burden.

To assess whether the qualified immunity defense applies, the court must undertake a two-step process. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court must decide whether plaintiff alleges a constitutional violation, and if so, whether the right was "clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* Even if this Court finds a 4th or 14th Amendment violation, it was not clearly established that the conduct which she describes would violate the Constitution.

> **B.    As a matter of law, Plaintiff has not alleged facts that establish either an unlawful seizure or an unlawful search under the Fourth Amendment.**

**1.    No Unlawful Search or Seizure.** Plaintiff has failed to allege facts demonstrating either an unlawful seizure or unlawful search under the Fourth Amendment. Plaintiff has not alleged that there was a *search* of her laptop computer -- only a seizure. Specifically, Plaintiff alleges only that she was deprived of her constitutional "property rights" as a result of an "unreasonable seizure of her property." (Compl. ¶¶ 99, 100.) She does *not* allege a Fourth Amendment violation on the basis of any unlawful search. The law was and is not clearly established that imaging the hard drive of a computer is a seizure under the Fourth Amendment.

Plaintiff asserts her claim based on the following: When Plaintiff reported to work on June 5, 2005, she was given two letters informing her that "her appointment at the UIC Medical Center was not being renewed" and that she was "reassigned to non-clinical academic duties." (Compl. ¶¶ 42, 43.) She was then asked to provide to UIC her employer-issued laptop computer so that a copy of the hard drive could be made and the laptop returned to her. (Compl. ¶ 43.) Campus security drove Plaintiff to her residence to retrieve the computer, and she provided it to a UIC employee, who made a copy of the laptop's hard drive and returned the laptop unaltered to Plaintiff. (Compl. ¶ 45.) Dr. Maes admits the laptop belonged to UIC. (Compl. ¶ 43).

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113 (1984). Plaintiff has not stated an unlawful seizure claim against Dr. Folberg, her supervisor and the Department head, as to the UIC-owned laptop because she had no possessory interest in the physical property. Had the hard drive not been copied but the laptop merely retrieved, there could be no unlawful seizure. It was owned by UIC, and it had a right to have it back.

Plaintiff also does not state a claim for seizure of whatever personal information she may have had on the UIC computer's hard drive. As a matter of law, the mere act of copying the hard drive is not a seizure of her personal information. The Supreme Court has established that simply copying information - even personal information - is not a seizure because the act of copying does not interfere with the owner's possessory interest in that property. *See Arizona v. Hicks*, 480 U.S. 321, 324 (1987) (police officer copying the serial number on a stolen stereo did not "meaningfully interfere" with possession of the serial numbers or the stereo); *see also Bills v. Aseltine*, 958 F.2d 697, 707 (6th Cir. 1992) ("[T]he recording of visual images of a scene by means of photography does not amount to a seizure because it does not 'meaningfully interfere' with any possessory interest.); *United States v. Thomas*, 613 F.2d 787, 793 (1980) (the FBI's photocopying, then repackaging materials that were in transit was not a seizure because there was no taking of property). The only court that has considered this issue in the context of computer data has found that simply copying the data is not a seizure. *United States v. Gorshkov*, 2001 WL 1024026, *3 (W.D. Wash. 2001). In *Gorshkov*, the FBI logged on to the suspect's computer and downloaded files without reading them. *Id.* at *1. Finding this action was not a seizure in violation of the Fourth Amendment, the court determined that because the data remained "intact and unaltered," the defendant could thereafter still access the information,

and the copying "had absolutely no impact on his possessory rights." *Id.* at *3. The data collection process in that case is similar to the one followed by UIC. The University technology staff simply imaged the hard drive, and there is no allegation anyone has reviewed those files. The copying of the hard drive did not interfere in any way with Plaintiff's possessory rights. In summary, there was no seizure.

### 2. Dr. Folberg could have reasonably known that his alleged actions amounted to a violation of a clearly established constitutional right.

Citing *O'Connor v. Ortega*, 480 U.S. 709 (1987), for the principle that Plaintiff had a reasonable expectation of privacy in the information on her computer is only the threshold step of the qualified immunity analysis here. "To demonstrate that the law was clearly established, the plaintiff may point to closely analogous cases demonstrating that the conduct is unlawful or demonstrate that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution." *McGreal v. Ostrov*, 368 F.3d 657, 683 (7th Cir. 2004). This she has not and cannot do. To the contrary, at the time of the alleged violation on June 5, 2006, it was not clearly established that an official who temporarily repossesses an employer-issued computer to copy the hard drive has acted in violation of the Fourth Amendment.

Although Plaintiff has not alleged that there was a *search* of her laptop computer, even if this Court analyzes her Fourth Amendment claim as a "search" of the University laptop, Dr. Folberg is protected by qualified immunity. The hard drive was imaged, but not reviewed. Whether making a copy of the hard drive is a search is still an unresolved issue. There is no analogous case law on point, and the relevant academic literature supports the contention that a search of electronic data only occurs when the information is viewed.[4] Because no one has

---

[4] *See, e.g.,* Orin S. Kerr, *Searches and Seizures in a Digital World*, 119 HARV. L. REV. 531, 548 (2005) ("The best answer is that a search occurs when information from or about the data is exposed to possible human observation, such as when it appears on a screen, rather than when it is copied by the hard drive or processed by the computer.").

reviewed the information on the imaged copy, any reasonable expectation of privacy Plaintiff may have had in any personal information she might have stored on the laptop has not been violated, and there has been no *search* under the Fourth Amendment. Given the ongoing debate and state of the law, Plaintiff cannot meet her "burden of demonstrating that constitutional right allegedly violated was clearly established 'before the defendant[s] acted or failed to act.'" *See Gossmeyer,* 138 F.3d at 495-96 (internal citation omitted) (dismissing claim where "the unlawfulness of … defendants' conduct would not, and should not, have been readily apparent to them"). Thus, Dr. Folberg is entitled to qualified immunity, and Count VII should be dismissed.

> **C.   Dr. Folberg is Entitled to Dismissal of the "Stigma-Plus" Claim Because Plaintiff Fails to State a Claim and on Qualified Immunity Grounds.**

In Count VI, relying on the same alleged plagiarism statements supporting her claim of defamation, Plaintiff asserts § 1983 Fourteenth Amendment "stigma-plus" claim against Dr. Folberg individually and in his official capacity to redress alleged violations of her "reputation and employment opportunities." (Compl. ¶ 2.) However, she fails to state a claim, and the defense of qualified immunity shields Dr. Folberg from liability. *Khuans*, 123 F.3d at 1013.

> **1.   The facts alleged in Count VI do not state a constitutional violation.**

To state a "stigma-plus" claim, "plaintiff must allege that a state official made a stigmatizing statement about [her], and incidental to such statement, altered [her] status in such a tangible way or deprived [her] of a right the state previously recognized." *See Coleman v. Williams, LTD., v. Wisconsin Dep't of Workforce Dev.*, 401 F. Supp. 2d (E.D. Wisc. 2005) (citing *Paul v. Davis*, 424 U.S 693, 701, 711-12 (1976) and *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002)). Plaintiff treats this claim as if it is merely a defamation claim, but stating a "stigma-plus" claim requires much more. *Brown v. City of Mich. City, Ind.,* 462 F. 3d 720, 730 (7th Cir. 2006) ("mere defamation by the government does not deprive a

person of liberty protected by the Fourteenth Amendment, even when it causes serious impairment of [one's] future employment.")  As shown below, as a matter of law, Plaintiff has failed to allege a viable "stigma-plus" claim.

> **a. The alleged defamatory statement is neither in conjunction with a termination, nor was there a termination or other qualifying action accompanied by a publicly announced defamatory statement.**

Plaintiff alleges that Dr. Folberg "made false, defamatory charges against [her] that she engaged in plagiarism to the Dean of the College of Dentistry, those considering her tenure decision, and on information and belief, others outside of the University of Illinois Medical Center at Chicago and Colleges of Medicine and Dentistry."  (Compl. ¶ 71.)  The complained of employment actions are set forth in ¶ 93 of the Complaint:

(1) "Defendant Folberg has caused Dr. Maes to be removed from her positions as Director of Clinical Pathology and Director of Transfusion Medicine, removed her from clinical responsibilities including patient care at the UIC Medical Center,"
(2) "caused her not to be hired at the College of Dentistry and caused her to be removed as a teacher in both the Colleges of Medicine and Dentistry," and
(3) "is in the process of taking actions to prevent her from being given tenure."

Plaintiff claims that "the impact of these defamatory statements will be to prevent her from having a career in academic medicine in both state and private universities or as a doctor in private practice or as a teacher." (Compl. ¶ 94.)  Plaintiff's allegations miss the mark.  A "stigma-plus" claim has two very specific requirements.  First, an employee must allege that the stigmatizing statement and the employment decision happened *in conjunction with each other*. *See Hadley v. County of Du Page*, 715 F.2d 1238, 1246 (7th Cir. 1983) (emphasis added).  "The key, [to the "stigma-plus" test] therefore, is that the defamation must occur in the course of the termination of employment."  *Id.*; s*ee Guy v. State of Ill.*, 968 F. Supp. 1300, 1311 (N.D. Ill. 1997) (a liberty interest deprivation occurs when the defamatory remarks happen "in conjunction" with a termination); *Siegert v. Gilley*; 500 U.S. 226, 234 (1976) (due process claim

not stated because defamatory statements were not made "incident to the termination").  Second, even if a public employee is discharged, there can be no "stigma-plus" claim if the reason for the employment action is not *publicly* disclosed.  A "termination is only stigmatizing if it is accompanied by a publicly announced reason that 'impugns [the employees] moral character' or "implies 'dishonesty or other job-related moral turpitude.'" *Hedrich v. Board of Regents*, 274 F.3d 1174, 1184 (7th Cir. 2001) (citations omitted).  Here, no alleged defamatory statements were made in connection with any employment termination or other alteration of her legal status.

   **b.**   **The Medical Center Terminations.**  Plaintiff alleges that the purported defamatory statement were communicated to the Dean of the College of Dentistry "*in the fall of 2006*" and "on information and belief" to those within the College of Medicine *who are considering a tenure decision* regarding Dr. Maes and to others outside of the College of Medicine and Dentistry "since November 21, 2007."  (Compl. ¶ 55.)  In contrast, the employment termination decisions about which she complains relative to the Medical Center all <u>predate</u> the alleged defamatory statement and are certainly not incidental to it.  (*See* Compl. ¶¶ 17, 42.)  None of the actions taken with respect to the Medical Center or her termination were accompanied by a publicly disclosed defamatory statement by Dr. Folberg.

   **c.**   **Teaching and tenure in the College of Medicine.**  Plaintiff is currently employed by the University as "an associate professor" in the College of Medicine (Compl. ¶ 7).  Likewise, any tenure decision regarding Plaintiff has not yet been made ("is in the process of taking actions to prevent her from being given tenure" Compl. ¶ 93).  Thus, any stigma-plus claim related to the College of Medicine or her tenure is premature at best, and there been no public disclosure in conjunction with the alleged defamatory statements and any claimed action.

    **d.**  **Dental School.** Plaintiff alleges that she was going to be hired to perform research with Dr. Schwartz in the Dental School but the offer was withdrawn on or about September 8, 2006, and that she "was removed as the Co-Director and teacher of a pathology class in the College of Dentistry for the winter semester in 2006-2007 through [Dr. Folberg's] intervention." (Compl. ¶¶ 50, 52, 54). September 8, 2006 is *before* Plaintiff alleges Dr. Folberg told the Dental School Dean about her plagiarism. Plaintiff does not allege that any termination decision occurred in conjunction with any defamatory statement. But even if she had, there was no public disclosure by Dr. Folberg that Plaintiff did not get the research or teaching assignments in the Dental School because of or in conjunction with the alleged plagiarism statement.

    **e.**  **Plaintiff has not alleged a permanent loss of employment opportunities.** Plaintiff must show that she suffered a tangible loss of employment opportunities due to the public disclosure of the defamatory communication. *See Johnson*, 943 F.2d at 16. Merely showing some impairment to employment is insufficient to trigger the constitutional requirements of due process. The stigmatizing statements must have the "effect of blacklisting" plaintiff "from employment in comparable jobs." *Trejo v. Shoben*, 319 F.3d 878, 889 (7th Cir. 2003); s*ee Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001) (the defamatory statement must "make[s] it virtually impossible" for the plaintiff "to find new employment in his chosen field."); *Hunt v. Indiana Family & Social Serv*s., 2007 WL 2349626, at *10 (S.D. Ind. 2007) (unsuccessfully applying for 7 jobs over 3 years was insufficient).

  Here, Plaintiff alleges that the stigmatizing communication will prevent her from having a career in academic medicine. At this point, however, she has still has her job with the College of Medicine and her medical license, and she has identified no job opportunity outside of UIC as denied because of any publicly disclosed defamatory statement. (Compl. ¶ 94.) Speculative

allegations that at some unidentified point in the future she will be unable to have a career in academic medicine are insufficient to state a claim. *See Guy*, 968 F. Supp at 1311; *Draghi v. County of Cook*, 991 F. Supp. 1055, 1059 (N.D. Ill. 1998); *Hedrich*, 274 F.3d at 1184; *Klug v. Chicago Sch. Reform Board of Trustees*, 197 F.3d 853, 860 (7th Cir. 1999). The facts alleged here are insufficient to state a viable "stigma-plus" claim.

### 2. Dr. Folberg could not have reasonably known that his conduct was a violation of clearly established constitutional standards.

There was no public disclosure of any alleged defamatory statement made by Dr. Folberg in conjunction with the alteration of any legal status. Taking the facts as Plaintiff presents them, whether Dr. Folberg violated her constitutional rights by way of a "stigma-plus" violation is, at best, undecided. Dr. Folberg simply could not have reasonably known that his alleged actions would give rise to a clearly established constitutional violation. Plaintiff is unable to meet that burden, and this claim should be dismissed.

### CONCLUSION

For the foregoing reasons, Dr. Folberg respectfully requests that this Court grant the relief requested in his motion to dismiss.

Respectfully submitted,

**ROBERT FOLBERG, M.D.**

By: s/ Mark E. Furlane
Mark E. Furlane, Esq. (ARDC # 00897175)
Noreen H. Cull, Esq. (ARDC # 06229417)
**Drinker Biddle Gardner Carton**
(Drinker Biddle & Reath, LLP)
Telephone: (312) 569-1000/ Fax: (312) 569-3000
191 N. Wacker Dr., Suite 3700, Chicago, IL 60606-1698
E-mail: mark.furlane@dbr.com
E-mail: noreen.cull@dbr.com

### CERTIFICATE OF SERVICE

      The undersigned attorney certifies that on January 3, 2008, he caused a copy of the foregoing **DEFENDANT ROBERT FOLBERG'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS**, to be served by electronically filing it with the Clerk of the Court, which will send notification of such filing to the following:

Steven Saltzman
122 South Michigan Avenue
Suite 1850
Chicago, Illinois  60603
Email: Saltzcases@gmail.com

                                          By:  s/ Mark E. Furlane
                                          Mark E. Furlane, Esq. (ARDC #00897175)
                                          DRINKER BIDDLE GARDNER CARTON
                                          191 North Wacker Drive, Suite 3700
                                          Chicago, Illinois 60606-1698
                                          Telephone:  (312) 569-1000
                                          Fax:  (312) 569-3000
                                          E-mail:  mark.furlane@dbr.com

CH01/ 12526700.6